IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF IDAHO

| | |
|---|---|
| TIM BROST, ) | |
| ) | |
| Plaintiff, ) | **Case No. 1:07 CV 120 EJL** |
| vs. ) | |
| ) | **MEMORANDUM ORDER** |
| CITY OF BOISE, BOISE CITY ZOO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court in the above-entitled matter is Defendant City of Boise's ("City") motion for summary judgment (Docket No. 12). The Plaintiff Timothy Brost ("Brost") has filed a response and the City filed a reply. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

Timothy Brost is a former zookeeper with Zoo Boise. Brost began as a zookeeper on July 5, 1984. Prior to 2004, Brost's employment was largely without incident. In the years leading up to 2004, Brost experienced a number of difficulties including the loss of his father to cancer, his mother was treated for breast cancer and he had surgery to remove a tumor in 2005. In 2004, Brost's job performance declined and his behavior and conduct with co-workers became negative. Brost's received a warning letter concerning a number of incidents of being disrespectful towards co-workers. Brost allegedly engaged in conduct that endangered zoo

MEMORANDUM ORDER-1

animals, other zoo employees and himself.  Brost received a reprimand in October 2004 and in November 2004.  The City was concerned about Brost's ability to perform essential functions of his job.  The City placed Brost on a non-disciplinary administrative leave and required him to undergo a fitness–for-duty evaluation.

Brost was evaluated by Dr. Eisenbeiss who performed a psychological evaluation. As part of Brost's medical history, Brost provided information that he was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") in approximately 1981 by Dr. Cooper, a psychiatrist. He tried various medications and it was determined that Ritalin worked best and he had been on Ritalin for about 12 years and such medication has also been prescribed by Dr. Boyer, his current psychiatrist.

Dr. Eisenbeiss recommended that "therapeutic efforts should be made to reduce the stressors of his home life and work life" and that Brost see his psychiatrist, Dr. Boyer, concerning his medication and possible side effects and that he receive mental health counseling. Docket No. 13-2, Exhibit A, p. 6 - 7.  Dr. Eisenbeiss also recommended:

> 9.  A written a [sic] list of specific duties required of Tim's job at the zoo would be helpful.  He could then check off each task as it is completed.
>
> 10.  More frequent meetings with his supervisor as well as other workers with whom he works would be beneficial.

Id. at p. 7.

Brost attended counseling with Dr. Henderson, but she was not comfortable signing a work release for the City since she is not a physician.  The City then contacted Dr. Boyer regarding Brost's fitness to return to work.  Dr. Boyer recommended Brost undergo a neuro-psychological evaluation.   Dr. Eisenbeiss conducted a neuro-psychological evaluation on Brost.

MEMORANDUM ORDER-2

On February 22, 2005, Dr. Boyer provided the City with a Medication Check indicating she did not recommend Brost be in a position where he worked with wild animals and suggested Brost be re-tested in three months since he was coming off certain medications when the neuro-psychological evaluation was completed. Dr. Boyer had Brost go off Ritalin and prescribed new medication to address the ADHD.

On March 10, 2005, Dr. Boyer provided the City with a letter that stated she did not see any reason Brost could not return to work. Then on March 16, 2005, Dr. Boyer reversed this position and sent the City a letter indicating she was not giving Brost a formal release to work. Due to the conflicting recommendations by Dr. Boyer, the City elected to have Brost re-evaluated by a physician of the City's choosing. Dr. Lipetzky evaluated Brost on April 25, 2005.

After reviewing all the prior evaluations and medical records, Dr. Lipetzky determined on June 6, 2005, Brost could return to work. Dr. Lipetzky did not think any accommodations were necessary at that time, but did indicate if there is a crisis in Brost's life or he feels overwhelmed, then he could be assisted by using memory tools like a notepad or pocket tape recorder. Dr. Lipetzky also noted Brost would benefit from continuing his individual therapy to address his emotional coping skills; he should continue to develop and use his social support system; and continue his medication management for his depression and ADHD. Docket No. 13-2, Exhibit T.

In the more detailed report supporting his June 6, 2005 letter, Dr. Lipetzky indicates in his summary that Brost "would do much better on a predictable routine with the same tasks in the same order in the same section of the zoo." Dr. Lipetzky confirms the earlier evaluations

MEMORANDUM ORDER-3

that Brost's memory skills are in the low average range. "He is going to need more visual cues than verbal cures. He is better at remembering things that are told to him verbally than doing things he had seen visually done. A stable/predictable routine at work would be best for Mr. Brost." Docket No. 13-2, Exhibit Q, p. 8.

On June 10, 2005, Brost met with the Director of the Zoo, Steve Burns, as well as the Parks and Recreation Director, Jim Hall. At the meeting, Burns provided a letter to Brost outlining the work expectations for Brost and all zookeepers. At that time he did not request any accommodations from his employer. On June 14, 2005, Brost returned to work in the same zookeeper job he previously held.

Brost claims his job duties were increased when he returned. He was a floater zookeeper when he left and a primary zookeeper when he returned to work. Brost argues his work was scattered over the zoo instead of one area and this caused him difficulty.

The City responded that his job duties were comparable to other zookeepers and when examined in detail Brost was actually responsible for fewer exhibits on average than the other zookeepers. Brost was assigned to animals on which he had been previously trained and duties he had previously handled. Zookeepers had radios and could communicate with supervisors regarding questions during the day. Also the staff had daily staff meetings to discuss concerns and issues. Notepads and pens were available for employees to use and Burns observed Brost using a notepad after returning to work.

Zoo Boise is not a large zoo since it only covers 11 acres. Zookeepers are each responsible for numerous exhibits, but the number of exhibits is not the same for each zookeeper since the sizes and requirements for each exhibit differ. There is a written manual which sets

MEMORANDUM ORDER-4

forth the protocols for each exhibit.  A zookeeper could follow the protocol and complete the duties even if that zookeeper was not familiar with the exhibit.

The job description for a zookeeper was provided to the Court in Docket No. 14, Exhibit 2.  It appears to the Court that the duties are generally the same for a floater zookeeper or a primary zookeeper (dedicated to certain exhibits).  Brost admitted in his deposition that he did not ask for an accommodation when he met with the Zoo Director, Steve Burns.  But after he returned to work and was struggling he told Greg Callahan ("Callahan"), zoo operational manager and Dr. Wiggins ("Wiggins"), the zoo veterinarian, that he was overwhelmed by the work and was barely getting his animal care completed during the day which left him little time for observation of the animals and other duties.  Brost stated he got no response from either Callahan or Wiggins.

Brost was involved in several incidents with animals he was responsible for after he returned to work.  Brost's responsibility in the incidents is disputed.  Burns delivered a notice of termination to Brost on August 9, 2005 indicating Brost was terminated for his failure to perform the essential functions of a zookeeper.  Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission ("IHRC").  After receiving a "Notice of right to Sue," Plaintiff filed his Complaint in federal court on March 9, 2007, alleging a violation of the American with Disabilities Act ("ADA") for failing to engage in the interactive process mandated by the ADA to determine if reasonable accommodations were possible and terminating Brost.  Plaintiff also claimed the City allowed a hostile work environment to exist in violation of the ADA, but this claim has been withdrawn by Plaintiff.  See Plaintiff's Response to the Motion for Summary Judgment Filed on 11/1/2007, Docket No.

MEMORANDUM ORDER-5


19, p. 13.  Plaintiff's third claim was a violation of the state of Idaho's discrimination statutes. The City denies it has violated the ADA or state discrimination statutes.

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.[1]

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER-6

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Analysis

1. Legal Standard is the Same for Federal and State Claims

In all relevant ways the IHRA is nearly identical to the federal ADA. The Idaho Supreme Court relies on federal law to determine whether a plaintiff has made a sufficient showing to survive a summary judgment motion. See Stansbury v. Blue Cross of Idaho Health Serv., Inc.,

MEMORANDUM ORDER-7

918 P.2d 266, 269 (Idaho 1996). Therefore, the Court will address both the federal and state claims under the same legal analysis.

    2. Disability Under the ADA

Plaintiff alleges the City failed to engage in the interactive process mandated by the ADA to determine if accommodations could be made to allow Brost to do his job since he suffered from ADHD. In order to prevail on an ADA discrimination claim, an employee must show (1) that he was disabled within the meaning of the ADA; (2) that he was "qualified," meaning he was able to perform the essential functions of the job at issue, with or without a reasonable accommodation; and (3) that the employer terminated him because of his disability. See Wellington v. Lyon County School Dist., 187 F.3d 1150, 1154 (9th Cir. 1999). The term "disability" is defined in 29 C.F.R. § 1630.2(g):

> Disability means, with respect to an individual –
>
> (A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) A record of such an impairment; or
> (C) Being regarded as having such an impairment.

Only one of these parties must be satisfied for Brost to be considered an individual with a disability. 29 C.F.R. pt. 1630 Appx § 1630.2(g). However, the record of a disability subsection does not apply to the facts of this particular case. Accordingly, the Court will limits its review to subsections (A) and (C).

Brost argues his ADHD diagnosis is a "disability" under the ADA. The City contests this legal conclusion. Therefore, the Court must determine if Brost's ADHD (which the City was certainly aware of after the fitness for duty evaluation) qualifies as a "disability" under the ADA.

MEMORANDUM ORDER-8

Brost argues the ADHD substantially limits his major life activity of work, but does not argue for purposes of this motion that other major life activities are affected by the ADHD.

The determination of whether a person has a disability under the ADA is an individualized inquiry. Bragdon v. Abbott, 524 U.S. 624, 641-42 (1998). The Supreme Court in Sutton v. United Airlines, Inc.. 527 U.S. 471, 487 (1999), held that "the ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures." "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id. at 482-83. Thus, the analysis of whether a person is substantially limited in a major life activity and thus disabled under the ADA is evaluated in the person's corrective state.

In this case, the Plaintiff testified in his deposition that he was on medication for his ADHD and had been for years. In 2005, his medication was changed, but he testified it was working when he returned to work in June 2005. Brost was prescribed the same level of Ritalin by Dr. Berlant (whom he started seeing in March of 2005) as he was taking from Dr. Boyer. Brost Deposition, pp. 62-64, Exhibit 1 to Affidavit of Daniel Williams, Docket No. 21. In July 2005, Dr. Berlant took Brost off Ritalin and put Brost on Concerta to keep Brost on an even-keel throughout the day after Brost told him he had received a couple of reprimands since coming back to work. Id. at 63-64. Brost felt the Concerta was working even though he felt overwhelmed by his duties as a zookeeper when he returned to work. The doctors who evaluated Brost's determined his medication for ADHD allowed Brost to function at work without accommodation. No doctor submitted a report to the City that Brost was disabled for purposes of the ADA.

MEMORANDUM ORDER-9

With these undisputed facts in mind, the Court must address whether or not Brost's ADHD limits him from the major life activity of working. The regulations define "working" as a major life activity. 29 C.F.R. § 1630.2(I). Federal regulations also provide that with respect to the major life activity of working, "substantially limited" means:

> [S]ignificantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I).  The question is not whether Brost is limited from being a zookeeper, but is he at a minimum, unable to work in a broad class of jobs.  Sutton, 527 U.S. at 491.

> The EEOC further identifies several factors that courts should consider in determining whether an individual is substantially limited in the major life activity of working, including the geographical area to which the individual has reasonable access, and "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." §§ 1630.2(j)(3)(ii)(A), (B).  To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

Id. at 491-92.

In the present case, Brost is a zookeeper in Boise, Idaho.  While it is true there are not a number of zoos in the area at which he could be employed, the skills associated with zookeeping are similar to skills used for a broad class of jobs in the Boise area.  Working outdoors, with animals and some machinery are all skills that are easily transferable to other employment opportunities such as cattle ranching, working at the humane society, working for a veterinarian,

MEMORANDUM ORDER-10

working for a parks department or a pet store, etc.  There is no evidence in the record before the Court that Plaintiff's individual skills preclude him from a substantial class of jobs or a broad range of jobs even though his impairment may keep him from working as a zookeeper with wild animals.  The Court notes that Brost has a college degree in addition to valuable years of work experience.  Boise, Idaho is a fast growing area and Plaintiff has failed to establish in this geographical area there are no jobs available using Plaintiff's skills (but perhaps not his unique zookeeping talents).

Therefore, the Court finds as a matter of law Plaintiff has failed to establish that when he is on his medication for ADHD, the ADHD impairment he suffers rises to a level of becoming a disability that substantially limits the major life activity of working when applying the EEOC factors.  This case is very similar to Whitlock v. Mac-Gray, Inc., 345 F.3d 44 (1st Cir. 2003), wherein the court found mere evidence of a medical diagnosis of ADHD does not prove a disability for purposes of the ADA.   Having found no disability under the ADA, an employer may decide that a limiting, but not substantially limiting, impairment makes a person less than ideally suited for a particular position.  Sutton, 527 U.S. at 490-91.  Moreover, a person who is not disabled is not entitled to a "reasonable accommodation" as defined by 29 C.F.R. § 1630.2(o).  The City determined Plaintiff was not completing the essential functions of a zookeeper and was potentially putting himself, others and zoo animals in danger.  The City was not required by law to offer reasonable accommodation to Plaintiff before terminating his employment.

MEMORANDUM ORDER-11

4.  <u>Plaintiff was not "regarded" as having a disability</u>

       To the extent Plaintiff is arguing that the City "regarded" him has having a disability even if he did not actually have one, Plaintiff has failed to carry his burden to establish such a claim as a matter of law.  "Generally, these claims arise when an employer mistakenly believes that an individual has a substantially limiting impairment."  <u>Sutton</u> at 473.

       The evidence in this case shows the City was aware of Brost's impairment due to ADHD after the City had Brost evaluated for his fitness for duty, but there is no evidence that the City regarded his ADHD as a disability under the ADA.  While it is true the City asked Plaintiff if he wanted any accommodations when Burns and Hall met with Brost before he started back to work in June 2005, the use of the term "accommodation" alone is insufficient to support the conclusion the City regarded Brost as being disabled.  None of the letters from the City use the term "disability."  For example, the City was concerned about Brost's behavior and was asking for a medical opinion to "determine whether Mr. Brost's ability to safely perform essential job functions will be impaired by a medical condition and whether he poses a safety threat to himself or others due to a medical condition."   Sarah Martin's letter to Joan Henderson, dated December 8, 2004, Exhibit C to Affidavit of Sarah Martin, Docket No. 13 and Sarah Martin's letter to Dr. Michele Boyer, MD, dated December 17, 2004, Exhibit F.  Both of these letters also request suggestions regarding accommodations, but such a reference does not establish as a matter of law that the City regarded Brost as disabled under the ADA.  Simply put, acknowledgment of an impairment by an employer alone does not does equate to "regarding" the employee as disabled under the ADA.

MEMORANDUM ORDER-12

Conclusion

Defendant is entitled to summary judgment as even viewing the facts in a light most favorable to Plaintiff, the record would not permit a trier of fact to find that Plaintiff is "disabled" under the ADA.  The Court need not reach Plaintiff's argument that the City had a duty to engage in the interactive process of determining a reasonable accommodation since Plaintiff does not suffer from a disability under the ADA.  Nor did the City terminate the Plaintiff in violation of the ADA.

Order

Being fully advised in the premises, the Court hereby orders that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED as to all claims and the case is dismissed.  The parties stipulation to vacate and reschedule the trial date (Docket No. 26) is MOOT.  The current trial date of May 27, 2008 is hereby VACATED.

DATED:  **April 23, 2008**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER-13